2001 WY 10

**James Charles McFARLANE,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 00–58.**

Supreme Court of Wyoming.

Feb. 2, 2001.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Hughes, Assistant Appellate Counsel.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1] Appellant, James Charles McFarlane (McFarlane), seeks review of his conviction for larceny, contending that the conviction must be reversed because there was insufficient evidence to sustain it. McFarlane contends that he was not appropriately charged, *i.e.,* that the evidence may support a conviction for possession of stolen property, but not for the larceny itself. We disagree with his view of the evidence and affirm.

**ISSUE**

[¶ 2] The sole issue in this appeal is simply stated by both parties: Is the evidence sufficient to sustain McFarlane's conviction for larceny?

**FACTS**

[¶ 3] In September of 1998, Karla and Tony Doll took a 1997 Artic Cat Powder Special snowmobile to Dampier's Snowmobiles, Inc., in Newcastle, Wyoming, to be sold

on consignment for a minimum price of $4,200.00. Mrs. Doll last saw the snowmobile at Dampier's on November 21, 1998. Mr. Doll died on January 8, 1999. On January 15, 1999, the day of Mr. Doll's funeral, Mrs. Doll's brother placed a call to Dampier's to inquire about the snowmobile. Mrs. Doll received a return call, reporting that the snowmobile had been stolen. The theft was reported to the Weston County Law Enforcement Center. Shortly after the snowmobile was reported as stolen, it was located at McFarlane's home. The reason the snowmobile was discovered so quickly is that a Newcastle police officer had been in McFarlane's house on January 8, 1999, on an unrelated but official matter, and that officer recalled seeing parts of a disassembled snowmobile, fitting the description of the Doll's snowmobile, in McFarlane's basement. The snowmobile had been cannibalized for parts, but law enforcement officers were able to identify it from its vehicle identification number (VIN). The motor, as well as many other parts of the machine, were gone. McFarlane told the police officers that he and a couple of friends had found the snowmobile in the city dump in October or November, and that the parts he possessed and turned over to the police were the parts he found at the dump. McFarlane's story was not corroborated by the testimony of the friends who were supposedly with him when he found the snowmobile, nor was his story corroborated by testimony of employees of the city dump, who testified that they had never seen the snowmobile nor McFarlane at the dump. The motor from the Doll's snowmobile was found in another snowmobile that McFarlane had sold to a third individual, Jason Bell, who happened to be the person who came to post bail for McFarlane. McFarlane initially claimed that the motor in that snowmobile was the same motor which was in it when he bought it from a dealer in Gillette. The State's evidence disproved that scenario and, during his testimony, McFarlane told a story about buying a damaged motor from an unknown seller during Thanksgiving Day weekend in 1998, and that it was possible that he accidentally put that motor into the snowmobile which he sold to Jason Bell.

## DISCUSSION

[¶ 4] McFarlane contends that the evidence is insufficient to sustain the conviction for larceny but appears to concede that it could sustain a conviction for possession of stolen property. Of course, McFarlane was neither charged with, nor convicted of, the latter crime. When reviewing an appeal based on sufficiency of the evidence, we view the evidence, and any applicable inferences based on the evidence, in a light most favorable to the State. *Nixon v. State*, 994 P.2d 324, 329 (Wyo.1999); and *see Pool v. State*, 2001 WY 8, 17 P.3d 1285 (Wyo.2001). In conducting such a review, we do not substitute our judgment for that of the jury; rather, we determine whether a quorum of reasonable and rational individuals would, or even could, have found the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

[¶ 5] In Wyo. Stat. Ann. § 6–3–402(a) (LEXIS 1999) the crime of larceny is described as follows:

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

If the value of the property which is the subject of the larceny is $500.00 or more, the maximum penalty is ten years imprisonment and/or a $10,000.00 fine. § 6–3–402(c)(i).

[¶ 6] In Wyo. Stat. Ann. § 6–3–403 (LEXIS 1999) the crime of wrongful taking or disposing of property is described as follows:

(a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both, if the value of the property is five hundred dollars ($500.00) or more;

[¶ 7] With respect to the crime of larceny, the jury was given this instruction:

The defendant is charged with the crime of larceny, the elements of which are:

1. The events occurred at some time between November 21, 1998 and January 15, 1999, in Weston County, Wyoming; and

2. The Defendant, James Charles McFarlane, did steal, take and carry, lead or drive away property of another; and

3. He did so with the intent to deprive the owner or lawful possessor; and

4. The value of the property was $500.00 or more;

If you find from your consideration of all of the evidence that any of these elements have not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

If, on the other hand, you find from your consideration of all of the evidence that each element has been proved beyond a reasonable doubt, then you should find the defendant guilty.

[¶ 8] The only element in dispute is element number 2. McFarlane claims he did not steal the snowmobile; rather, he merely bought, received, concealed, and/or disposed of it. Of course, implicitly he also contends he did not know, believe, nor have reasonable cause to believe, that he had obtained the snowmobile in violation of the law.

[¶ 9] In constructing his argument, McFarlane relies heavily on our decision in *Mendicoa v. State*, 771 P.2d 1240, 1245 (Wyo. 1989), as well as *State v. Ellestad*, 88 S.D. 595, 225 N.W.2d 879 (S.D.1975). In *Mendicoa*, we first noted that we were dealing with a specific type of larceny, *i.e.*, livestock rustling. Our decision rested in significant part upon the fact that the disappearance of the cattle could be traced to a reasonably ascertainable time, but that there was no evidence linking Mendicoa to the disappearance. In *Mendicoa*, the State argued that, although mere possession of recently stolen property is insufficient to support a conviction of larceny, possession in conjunction with other incriminating circumstances, such as misstatement and concealment, will support such a conviction. We expressed our view that we had no quarrel with that construct as a general principle. 771 P.2d at 1244. Our decision to reverse Mendicoa's convictions then rested on our determination that such an inference could not be drawn in Mendicoa's case. The application of the inference depends upon the recency of the alleged theft. *Id.* Therefore, we held that possession of stolen cattle which, at a minimum, was over a month after their disappearance, to as much as one and one-half years after, was not "recent" enough to fit within the rule. 771 P.2d at 1245. Moreover, over Mendicoa's objection, the jury was instructed regarding the permissible inference of theft from the unexplained possession of recently stolen property. Our conclusion was that the predicate fact of recency, upon which the inference depends, was not established by the evidence. 771 P.2d at 1245–46.

[¶ 10] In reaching our decision we relied on a case from the South Dakota Supreme Court, which also dealt with cattle rustling, for the proposition that the "test of recency is whether the interval between the date of the alleged theft and the date of possession is so short as to render it morally or reasonably certain that there could have been no intermediate change of possession." *Ellestad*, 225 N.W.2d at 882. The *Ellestad* case relied on a premise that in determining whether the possession of stolen goods can be characterized as recent, the circumstances and character of the goods, their salability, and whether they are readily and easily transferable, are among the factors to be considered, along with the length of time involved. *Id.*

[¶ 11] We note that the jury in this case was not given an instruction telling them that the theft could be inferred from the possession of recently stolen property, as was done in both *Mendicoa* and *Ellestad*. In addition, we hold that the recency construct was met in this case. The snowmobile disappeared sometime after November 21, 1998, and McFarlane admitted to having possession of it on or about Thanksgiving weekend of 1998. Thus, the jury could infer from all of the evidence that McFarlane gained possession by a taking within a matter of days after the snowmobile was last seen (Thanksgiving fell on November 26, 1998). Even if we were compelled to go out to the maximum date of January 15, 1999, we would continue to view

the recency construct as having been met. When the circumstances and character of the goods, their salability, and whether they are readily and easily transferable are considered, we find the circumstances of this case distinguishable from cases involving the theft of livestock. For one thing, livestock can, and often do, drift away on their own. Livestock may have markings and distinguishing features that are identifiable to their owners (but not to most other persons), and they have brands which may be identifiable to brand inspectors. A snowmobile cannot move by itself, and it has a vehicle identification number and a motor number that make it distinguishable from any other in the world. In addition, both Mendicoa and Ellestad were regularly and significantly involved in buying and selling livestock. McFarlane's involvement in buying and selling snowmobiles can, at best, be characterized as incidental. The events of this theft took place in a fairly compact area within Weston County, and any doubt that the jury might have harbored, or that we might harbor, is not a reasonable one. *See generally,* Annotation, *What Constitutes 'Recently' Stolen Property Within Rule Inferring Guilt from Unexplained Possession of Such Property,* 89 A.L.R.3d 1202 (1979 & Supp.2000); and *see Rogers v. State,* 185 Ga.App. 211, 363 S.E.2d 846, 848–49 (1987) (two months not too remote); *People v. Panus,* 76 Ill.2d 263, 29 Ill.Dec. 113, 391 N.E.2d 376, 379 (Ill.1979) (four months not too remote); *Rushing v. State,* 461 So.2d 710, 712–13 (Miss.1984) (one month not too remote); *Marbles v. State,* 874 S.W.2d 225, 227–28 (Tex.App.—Houston [1st Dist.] 1994) (two and a half months not too remote); and *Montgomery v. Commonwealth,* 221 Va. 188, 269 S.E.2d 352, 353 (1980) (four weeks not too remote).

[¶ 12] The Judgment and Sentence of the district court is affirmed.